No. 17-1412

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

LATRICIA E. GOODWIN, individually and on behalf of a class of persons,

*Plaintiff - Appellee*

v.

BRANCH BANKING AND TRUST COMPANY,

*Defendant - Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA AT BECKLEY

**OPENING BRIEF OF APPELLANT
BRANCH BANKING AND TRUST COMPANY**

Jonathan L. Anderson
JACKSON KELLY PLLC
1600 Laidley Tower
Charleston, WV 25322
(304) 340-1000
jlanderson@jacksonkelly.com

Christopher K. Robertson
JACKSON KELLY PLLC
P.O. Box 1068
Martinsburg, WV 25402
(304) 260-4959
crobertson@jacksonkelly.com

John C. Lynch
Elizabeth S. Flowers
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
(757) 687-7500
john.lynch@troutmansanders.com
liz.flowers@troutmansanders.com

*Counsel for Appellant Branch Banking and Trust Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.      Does party/amicus have any parent corporations?                         YES     NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         YES     NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                    _____
          (signature)                                       (date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE

TABLE OF CONTENTS.....................................................................................i

TABLE OF AUTHORITIES............................................................................iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ......1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................................1

STATEMENT OF THE CASE..........................................................................2

    I.    THE AGREEMENT ...............................................................................2

    II.    COMPLAINT AND MOTION TO COMPEL ARBITRATION AND TO STRIKE............................................................................................4

    III.    THE DISTRICT COURT'S DENIAL OF BB&T'S MOTION...................5

SUMMARY OF ARGUMENT.........................................................................5

ARGUMENT ................................................................................................7

    I.    STANDARD OF REVIEW......................................................................7

    II.    THE DISTRICT COURT ERRED IN FINDING THE ARBITRATION AGREEMENT TO BE PROCEDURALLY UNCONSCIONABLE, AS THE ARGUMENTS AND EVIDENCE RELIED ON BY THE DISTRICT COURT WERE REJECTED BY THE WEST VIRGINIA SUPREME COURT IN 2016 ...............................9

    III.    THE DISTRICT COURT ERRED IN FINDING THE ARBITRATION AGREEMENT TO BE SUBSTANTIVELY UNCONSCIONABLE ......................................................................14

        A.    The bilateral fee-shifting provision does not render the Arbitration Agreement unconscionable .................................14

B.    The parties' agreement to narrow the limitations period is not substantively unconscionable .................................................... 18

C.    Preserving a lender's self-help remedies to assert its security interest is not substantively unconscionable ......................................... 20

D.    In finding the Arbitration Agreement to be substantively unconscionable, the District Court ignored clear precedent, disregarded the safeguards provided by the J.A.M.S. Rules, and wrongly adopted Goodwin's assumption that a competent and impartial arbitrator could not be selected ............................................... 24

IV.    EVEN ASSUMING, ARGUENDO, THAT A PROVISION OF THE ARBITRATION AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE, THE DISTRICT COURT ERRED IN REFUSING TO SEVER THAT PROVISION SO THAT ARBITRATION COULD BE COMPELLED ............................................... 28

V.    THE DISTRICT COURT ERRED IN NOT STRIKING CLASS ALLEGATIONS ................................................................................... 30

CONCLUSION ........................................................................................ 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Labor Ready, Inc.,*
    185 F. Supp. 2d 628 (S.D.W. Va. 2001)......................................................10

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011)............................................................*Passim*

*America Express Co. v. Italian Colors Restaurant,*
    133 S. Ct. 2304 (2013) ......................................................8

*Anderson v. Delta Funding Corp.,*
    316 F. Supp. 2d 554 (N.D. Ohio 2004) ......................................13

*Arnold v. United Companies Lending Corp.,*
    204 W. Va. 229, 511 S.E.2d 854 (1998) ..........................................22, 23

*Atlantic Textiles v. Avondale Inc.,*
    505 F.3d 274 (4th Cir. 2007) ......................................................19, 28

*Baker v. Green Tree Servicing LLC,*
    No. 5:09-cv-00332, 2010 WL 1404088 (S.D.W. Va. Mar. 31, 2010).........15, 16, 21

*Barras v. BB&T,*
     685 F.3d 1269 (11th Cir. 2012) ...............................................28

*Brown v. Genesis Healthcare Corp.,*
    228 W. Va. 646, 724 S.E.2d 250 (2012) ..........................................9, 13

*Brown v. Genesis Healthcare Corp. ("Brown II"),*
    729 S.E.2d 217 (W.Va. 2012) ......................................................8, 9

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006).................................................................8

*In re Checking Account Overdraft Litigation MDL,*
    No.2036, 485 Fed. Appx. 403 (11th Cir. 2012) ..................................15, 29

iii

*DIRECTV, Inc. v. Imburgia,*
    136 S. Ct. 463, 193 L. Ed. 365 (2015) ...................................................... 28

*Dan Ryan Builders, Inc. v. Nelson,*
    230 W. Va. 281, 737 S.E.2d 550 (W. Va. 2012) .................................. 22, 23

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) .............................................................................. 8

*Dobbins V. Hawk's Enterprises,*
    198 F.3d 715 (8th Cir. 1999) ............................................................ 17

*Dytko v. Chesapeake Appalachia, LLC,*
    No. 5:13CV150, 2014 WL 2440496 (N.D. W. Va. May 30, 2014) ........... 10, 16, 27

*Employee Resources Group, LLC v. Harless,*
    No. 16-0493, 2017 WL 1371287 (W.Va. Apr. 13, 2017) ................................. 15, 17

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ................................................................................ 27

*Green Tree Financial Corp.-Alabama v. Randolph,*
    531 U.S. 79 (2000) ............................................................................... 16

*Heller v. TriEnergy, Inc.,*
    No. 5:12-cv-45, 2012 WL 2740870 (N.D.W. Va. July 9, 2012) ............................. 16

*Kindred Nusring Ctrs. Ltd. Partnership v. Clark,*
    197 L. Ed. 2d 806, 137 S. Ct. 1421 (2017) ....................................... 16, 24

*Large v. Conseco Finance Servicing Corp.,*
    292 F.3d 49 (1st Cir. 2002) .............................................................. 17

*Livingston v. Associates Finance Inc.,*
    339 F.3d 553 (7th Cir. 2003) ............................................................ 17

*Miller v. Equifirst Corp.,*
    No. 2:00-0335, 2006 U.S. Dist. LEXIS 63816
    (S.D. W. Va. Sept. 5, 2006) .............................................................. 27

*Miller v. Equifirst Corp.*,
      No. 2:00-0335, 2006 WL 2571634 (S.D.W. Va. Sept. 5, 2006) ....................... 21, 22

*Miller v. Equifirst Corp. of*, W. Va.,
      No. 2:00-c 2006 WL 2571634 (S.D.W. Va. Sept. 5, 2006) ......................... 10, 22, 27

*Morrison v. Circuit City Stores, Inc.*,
      317 F.3d 646 (6th Cir. 2003) ...........................................................................19

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*,
      460 U.S. 1 (1983) ........................................................................ 8, 13, 28

*Muriithi v. Shuttle Exp., Inc.*,
      712 W. Va. 173 (4th Cir. 2013) ...............................................................7

*Nationstar Mortg., LLC v. West*,
      237 W. Va. 84, 785 S.E.2d 634 (2016) ...................................................*Passim*

*New v. GameStop, Inc.*,
      232 W. Va. 564, 753 S.E.2d 62 (2013) ....................................................14

*Nitro-Lift Techs, LLC v. Howard*,
      133 S. Ct. 500 (2012) ......................................................... 13, 24, 27

*Roach v. Navient Solutions Inc.*,
      No. 14-1215, 2015 WL 6756859 (W.Va. Mem. Decision Nov. 4, 2015) .............11

*Perry v. Thomas*,
      482 U.S. 483 (1987) ...................................................................... 8, 21

*Rota-McLarty v. Santander Consumer USA, Inc.*,
      700 F.3d 690 (4th Cir. 2012) ...................................................................7

*Santoro v. Accenture Federal Services, LLC*,
      748 F.3d 217 (4th Cir. 2014) ...................................................................8

*Southland Corp. v. Keating*,
      465 U.S. 1 (1984) ...................................................................... 24-25

*State ex rel. Ocwen Loan Servicing, LLC v. Webster*,
      232 W. Va. 341, 752 S.E.2d 372 (2013) .......................................... 10, 21

*Tompkins v. 23andMe, Inc.*,
     840 F.3d 1016 (9th Cir. 2016) ....................................................... 15

*Torrance v. Aames Funding Corp.*,
     242 F. Supp. 2d 862 (D. Or. 2002) ............................................... 22

*Tribeca Lending Corp. v. McCormick*,
     231 W. Va. 455, 745 S.E.2d 493 (2013) ........................................ 19

*Troy Min. Corp. v. Itmann Coal Co.*,
     176 W. Va. 599, 346 S.E.2d 749 (1986) ........................................ 18

*U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*,
     119 F. Supp. 3d 512, 531 (S.D.W. Va. 2015) ................................ 10

*Wigginton v. Dell, Inc.*, 890 N.E.2d 541 (Ill. App. 2008) ..................... 29

*Zekri v. Macy's Retail Holdings, Inc.*,
     No. 1:10-CV-1740-MHS, 2010 WL 4660013
     (N.D. Ga. Nov. 4, 2010) ................................................................ 30

## STATUTES

9 U.S.C. § 1 ............................................................................................ 1
9 U.S.C. § 2 ............................................................................................ 8
9 U.S.C. § 10(b) .................................................................................... 26
9 U.S.C. § 16(a)(1) ................................................................................. 1
28 U.S.C. § 1332(d) ................................................................................ 1
W. Va. Code § 46A-5-101(a) ................................................................ 18
W. Va. Code § 55-2-6 ........................................................................... 20

## CONSTITUTIONAL AMENDMENTS

U.S. Const., Art. IV, cl. 2 .................................................................... 28

## TREATISES

Restatement (Second) of Contracts § 208 (1979) ................................ 19

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an interlocutory appeal pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* from a March 10, 2017 Memorandum Opinion and Order ("the "Order") by the Honorable Irene C. Berger in the United States District Court for the Southern District of West Virginia, Civil Action No. 5:16-cv-10501, denying Defendant-Appellant Branch Banking and Trust Company's ("BB&T") Motion to Compel Arbitration and to Strike (the "Motion"). The District Court had federal subject matter jurisdiction over the case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1). The Notice of Appeal was timely filed on March 31, 2017.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1)    Whether the District Court erred in refusing to enforce the arbitration agreement (the "Arbitration Agreement") contained in the Retail Note and Security Agreement (the "Contract") that Plaintiff-Appellee Latricia E. Goodwin ("Goodwin") entered with BB&T on the basis that the Arbitration Agreement is procedurally unconscionable as an adhesion contract entered in a purportedly rushed environment between an allegedly unsophisticated borrower and a lender.

(2)    Whether the District Court erred in refusing to enforce the Arbitration Agreement on the basis that it is substantively unconscionable because it: (i) contains a bilateral fee-shifting provision, (ii) contains a one-year statute of limitation, except that the lender may bring an action to collect amounts due under the Contract within

1

three years of default; (iii) carves out self-help remedies that the lender may pursue to assert its contractual security interest; and (iv) specifies that the arbitrator shall be experienced in bank lending contracts.

(3)    Whether the District Court erred in refusing to enforce the Arbitration Agreement by rejecting BB&T's request to sever any provision(s) of the Arbitration Agreement found to be unconscionable, particularly in light of the strong federal policy favoring arbitration and presumption of enforceability.

(4)    Whether the District Court erred in refusing to enforce the Arbitration Agreement, thereby refusing to strike Plaintiff's putative class allegations, despite that Plaintiff expressly waived the right to class-wide adjudication.

<u>**STATEMENT OF THE CASE**</u>

## I.    THE AGREEMENT.

On May 20, 2009, Goodwin entered into the Contract with BB&T to refinance her mortgage, secured by a Credit Line Deed of Trust on her home in Princeton, West Virginia.    JA 46-55.    The Contract, which Goodwin signed, contains a conspicuous Arbitration Agreement that states:

> **Arbitration.**    Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement, or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S. / Endisupte or any successor thereof ("J.A.M.S."), and the rules set forth herein.    Judgment upon any arbitration award may be entered in any court having jurisdiction.    The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall

2

recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.

Arbitration hearings will be held in West Virginia in a mutually agreed city in the county in which I reside or the county in which the contract was entered into. The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts. All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for up to an additional 60 days. Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred, notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in an obligation I owe to you, you may file a civil action against me to collect amounts owed by me to you at any time within three (3) years from the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to ) setoff; (b) to institute and maintain foreclosure or sale against any personal property collateral; or (c) to petition a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession. You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceedings brought pursuant to this instrument, agreement, or document. Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

JA 49.

## II.    COMPLAINT AND MOTION TO COMPEL ARBITRATION AND TO STRIKE.

On October 4, 2016, Goodwin filed a Complaint against BB&T in the Circuit Court of Raleigh County, West Virginia, alleging that one or more collection letters sent to her demanded attorneys' fees and costs in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA").  JA 16-23.  Goodwin seeks to assert claims on behalf of a putative class of West Virginia borrowers that allegedly received the same or similar letters from BB&T in the four years preceding the filing of the Complaint.  JA 18 ¶ 13.  On November 3, 2016, BB&T removed the action to the District Court pursuant to CAFA.  JA 4-10.

On November 10, 2016, BB&T filed its Motion, seeking to compel arbitration and strike class allegations because Goodwin entered a binding Arbitration Agreement that requires her to arbitrate any claims against BB&T on an individual basis.  JA 43-62.  The parties and the District Court agree that BB&T satisfied the elements to compel arbitration under the FAA.  JA 147 ("There is no dispute here that the standard set forth in *Adkins* for moving to compel arbitration is met").  The sole issue before the District Court was Goodwin's argument that the Arbitration Agreement is unconscionable and unenforceable under West Virginia law.  JA 147.  The only evidence Goodwin submitted was an affidavit containing bare, conclusory statements, including that she: (1) is unsophisticated in financial matters and has limited education; (2) signed the loan documents in a rushed environment where the terms were not explained to her; (3) was unable to reject or modify the terms of the

4

agreement; and (4) would abandon her claim if required to pay BB&T's attorneys' fees in the event that BB&T prevailed in the arbitration. JA 80-81.

## III.   THE DISTRICT COURT'S DENIAL OF BB&T'S MOTION.

On March 10, 2017, the District Court denied BB&T's Motion, finding the Arbitration Agreement unconscionable under West Virginia law, and thus unenforceable, because: (1) procedurally, it is a contract of adhesion, Goodwin is unsophisticated, the loan closing was allegedly rushed, and the Arbitration Agreement appeared on page 4 of the Contract; and (2) substantively, it contained a bilateral fee-shifting provision and the terms lacked mutuality and specified that the arbitrator must have experience in bank lending contracts. JA 145-151.  In a footnote, the District Court declined to sever the alleged unconscionable provisions and compel arbitration. JA 150, n. 4.  It also refused to strike Goodwin's class allegations. The District Court's Order constitutes reversible error.

## SUMMARY OF ARGUMENT

The Federal Arbitration Act established a strong national presumption in favor of arbitration requiring courts to vigorously enforce agreements and resolve all doubts concerning enforceability in favor of arbitration.   By declaring the Arbitration Agreement so grossly unfair that it could not be enforced, the District Court failed to follow precedent from the Supreme Courts of the United States and West Virginia, and thereby reached the wrong conclusion.

5

Under West Virginia law, unconscionability only exists if there is a gross imbalance or one-sidedness in <u>both</u> the creation of the contract ("procedural unconscionability") <u>and</u> the terms of the contract ("substantive unconscionability"). Unfairness or unequal bargaining power is not enough to establish either requirement. Contrary to the District Court's Order, neither procedural nor substantive unconscionability exists based on the facts and controlling precedent.

The District Court found procedural unconscionability on the same grounds that were rejected by the West Virginia Supreme Court's 2016 opinion in *Nationstar Mortgage, LLC v. West*. As stated in *West*, an arbitration provision is not procedurally unconscionable solely because it is an adhesion contract entered in an allegedly rushed environment between an unsophisticated borrower and a lender. Otherwise, nearly every consumer contract in modern commerce would be unconscionable. Because unconscionability requires a showing of both procedural and substantive gross unfairness under West Virginia law, the absence of procedural unconscionability means that the Arbitration Agreement must be enforced. *West* is controlling and requires reversal of the District Court's Order.

Even if this Court reaches substantive unconscionability, the District Court's holding that the terms of the Arbitration Agreement render it unenforceable is incorrect as a matter of law because: (1) a bilateral fee shifting provision that applies equally to both parties cannot be grossly one-sided; (2) a one-year statute of limitation that carves out a limited exception for the lender's right to collect is entirely

reasonable and provides Goodwin the same limitations period she was entitled to for her claims at the time the Contract was entered; (3) preservation of self-help remedies, like foreclosure, is expressly permitted by the U.S. Supreme Court and West Virginia Supreme Court of Appeals and required in judicial foreclosure states; and (4) the U.S. Supreme Court has held that parties may specify that the arbitrator have subject matter experience; thus, the provision requiring the arbitrator to have experience in "bank lending contracts" is permissible.[1]  The District Court's holding undercuts J.A.M.S. rules and procedures that ensure a fair, alternative dispute resolution process. It also conflicts with strong precedent from the FAA, the U.S. Supreme Court and the West Virginia Supreme Court of Appeals.  For these reasons, the District Court's Order must be reversed and the case referred to arbitration on an individual basis.

## ARGUMENT

### I.    STANDARD OF REVIEW.

This Court reviews a district court's denial of a motion to compel arbitration *de novo*.  *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 178 (4th Cir. 2013).  Likewise, questions of state law concerning the validity of the parties' agreement are reviewed *de novo*.  *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012).

The Arbitration Agreement is governed by the FAA, which provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable" unless

---

[1] Even assuming *arguendo* that any of these provisions are unconscionable, the proper result would have been for the District Court to sever them so that arbitration could be enforced as the parties intended.

7

grounds exist at common law to revoke it.  9 U.S.C. § 2 (2012); JA 142.  "The principal purpose of the [FAA] is to ensure private arbitration agreements are enforced ["liberal(ly)"] according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006); *Concepcion*, 563 U.S. at 339 (same).

When interpreting arbitration agreements under the FAA, federal courts exercise a presumption in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Buckeye Check Cashing, Inc.*, 546 U.S. at 443.  The Supreme Court instructs that courts must "'rigorously enforce' arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2390 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014) (same).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone,* 460 U.S. at 24-25 (1983).

State law governs defenses to contract enforcement.  *Perry v. Thomas,* 482 U.S. 483, 493 n.9 (1987).  Under West Virginia law, unconscionability exists where there is a "gross imbalance" or "one-sidedness" such that the contract should not be enforced as written. *Brown v. Genesis Healthcare Corp. ("Brown II")*, 729 S.E.2d 217, 220 (W.Va. 2012).  Unfairness or unequal bargaining power is not enough to meet this standard. *Nationstar Mortg., LLC v. West*, 237 W. Va. 84, 91, 785 S.E.2d 634 (2016).

Unconscionability requires two component parts: procedural and substantive unconscionability. *Brown II*, 729 S.E.2d at 227. Procedural unconscionability concerns unfairness in the bargaining process and formation of the contract, whereas substantive unconscionability concerns unfairness in the terms of the contract. *Nationstar*, 237 W. Va. at 88, 92, 785 S.E.2d 634. <u>Both</u> procedural <u>and</u> substantive unconscionability must exist to declare a contract unenforceable. Syl. pt. 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2012) ("*Brown I*"). "The burden of proving that a contract term is unconscionable rests with the party attacking" it. *Id.* at 680. Goodwin failed to satisfy this burden, thus the District Court's Order denying BB&T's Motion must be reversed.

## II. THE DISTRICT COURT ERRED IN FINDING THE ARBITRATION AGREEMENT TO BE PROCEDURALLY UNCONSCIONABLE, AS THE ARGUMENTS AND EVIDENCE RELIED ON BY THE DISTRICT COURT WERE REJECTED BY THE WEST VIRGINIA SUPREME COURT IN 2016.

The District Court found that the Arbitration Agreement was procedurally unconscionable because: (1) it is a contract of adhesion (*i.e.* no right to alter terms or opt-out); (2) Goodwin is not sophisticated in financial matters; (3) BB&T is a large national lender with the advantage of drafting the Contract; (4) the signature page is on page 2 and the Arbitration Agreement is on page 4; and (5) the closing was rushed such that the terms were not explained to her. JA 147-48.

These grounds are insufficient to establish procedural unconscionability. Just last year, in *Nationstar Mortg., LLC v. West*, the West Virginia Supreme Court of

Appeals rejected nearly identical findings, reversing the lower court's holding that an arbitration agreement was procedurally unconscionable and remanding the case for entry of an order referring it to arbitration.[2]  237 W. Va. at 91, 785 S.E.2d at 641. First, the court, like the U.S. Supreme Court, recognized the realities of and need for standardized forms present in adhesive contracts.  *Id.* at 89, 785 S.E.2d at 639; *see Concepcion*, 563 U.S. at 346-47 (finding, state rule that created conditions to arbitration for adhesive contracts preempted by the FAA, noting "the times in which consumer contracts were anything other than adhesive are long past").  As such, the court held that an imbalance of power and inability to opt-out of arbitration are not persuasive factors of procedural unconscionability.  *Id.* at 90, 785 S.E.2d at syl. pt. 2.

Next, the court found conclusory statements of a borrower's lack of financial sophistication to be insufficient.  *Id.* at 90, 785 S.E.2d at 640; *see also State ex rel. Ocwen Loan Servicing, LLC v. Webster,* 232 W.Va. 341, 358, 752 S.E.2d 372, 389 (2013) (rejecting procedural unconscionability challenge to an arbitration agreement where

---

[2] Likewise, West Virginia's federal district courts have rejected and referred to these same arguments as "non-starters."  *See U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC,* 119 F. Supp. 3d 512, 531 (S.D.W. Va. 2015) ("This argument is a non-starter, as 'there is no requirement that the more sophisticated party to a contract offer the less sophisticated party an oral explanation of the terms of the contract' . . .  Plaintiff had only to read these relatively short agreements to notice and analyze the ADR Clause.") (quoting *Adkins v. Labor Ready, Inc.,* 185 F. Supp. 2d 628, 638 (S.D.W. Va. 2001)); *Dytko v. Chesapeake Appalachia, LLC,* No. 5:13-cv-150, 2014 WL 2440496, at *5 (N.D.W. Va. May 30, 2014) (holding defendant "was not under any obligation" to explain what arbitration was); *Miller v. Equifirst Corp. of W. Va.,* No. 2:00–cv-0335, 2006 WL 2571634, at *11 (S.D.W. Va. Sept. 5, 2006) (same).

record did not support that borrowers lacked sophistication "to a degree that rendered the contract unenforceable"). Additionally, the court rejected the lower court's finding that a loan closed in a hurried manner such that borrowers were not aware that they were relinquishing the right to use the court system is evidence of procedural unconscionability. *Id.* at 91, 785 S.E.2d at 641.

Lastly, the court found that the arbitration rider was clearly identified, even though it was allegedly presented to plaintiffs in a stack of origination papers. *Id.* at *90 (finding location of terms conspicuous), 95 (noting plaintiffs' argument). Here, as in *Nationstar*, Goodwin does not complain that she was denied the opportunity to read the Contract or that she lacked the capacity to understand it. *Id.* at 91, 785 S.E.2d at 641. Further, contrary to the District Court's characterization of the Arbitration Agreement as an "incorporated term," it is part of a single, unitary contract. The Contract is clear that it consists of 4 pages, the last of which contains the Arbitration Agreement, identified with a bold heading.[3] JA 46. The signature page states that it is subject to the terms and conditions contained on pages 3 and 4. JA 47.

In *Navient Solutions, Inc. v. Robinette*, the West Virginia Supreme Court upheld an arbitration provision much less conspicuous, that was in a *different* part of the loan packet and not chronologically numbered. No. 14-1215, 2015 WL 6756859 *4 (W.Va. Mem. Decision Nov. 4, 2015)("[T]he fact that Ms. Robinette failed to locate and read

---

[3] The lower right-hand corner of each page states "Page 1 of 4," "Page 2 of 4," "Page 3 of 4," and "Page 4 of 4." JA 46-49. The bottom of page 1 states that it is subject to additional terms and conditions contained on pages 2, 3, and 4. JA 49.

the promissory note portions of the contracts she entered does not excuse her from their terms."). Here, the facts are even stronger than in *Navient* – the location of the Arbitration Agreement in this case cannot support procedural unconscionability.

This case is squarely on point with the West Virginia Supreme Court's ruling in *Nationstar*, which controls. The District Court's single paragraph analysis relies on nearly identical arguments and evidence that the court in *Nationstar* held were insufficient to establish procedural unconscionability:

| Evidence Relied on by District Court for Procedural Unconscionability | West Virginia Supreme Court's Ruling in *West v. Nationstar* |
|---|---|
| "Goodwin did not have the opportunity to alter terms of the Loan Agreement or to opt out of the arbitration clause." JA 148. | "Courts around the country have recognized that the need for pre-printed form contracts is a stark reality of today's…consumer culture." *Id.* at 89.<br><br>"[T]he omission of an 'opt out' provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair." *Id.* at 90. |
| "Ms. Goodwin is a financially unsophisticated consumer." *Id.* | Conclusory statements or findings of a borrower's lack of sophistication are insufficient to support procedural unconscionability. *Id.* at 90. |
| "BB&T is a large national lender with significant experience in lending contracts, and had the advantage of drafting the loan agreement." *Id.* | "Because contracts of adhesion are by definition typically prepared by a party with more power, we do not view that factor as persuasive in itself." *Id.* at 90. |
| "Ms. Goodwin signed in a rushed environment, as is often the case for home loans." *Id.* | "Nothing about the circumstances of the closing, [including]…hurried document execution with minimal comprehension by the signatories – suggests that the agreement is unenforceable based on principles of unfairness. *Id.* at 91. |

12

| "The arbitration clause was not hidden, but did appear two pages after the only signature line."[4]  *Id.* | "[T]he inclusion of an arbitration provision within a mortgage loan agreement does not strike this Court as 'beyond the reasonable expectations of an ordinary person, or [as an] oppressive or unconscionable term." *Id.* at 91 (citing *Brown I*, 228 W. Va. at 683).<br><br>Failure to read a document in its entirety "does not excuse them from the binding effect of the agreements contained in the executed document." *Id.* at 91. |

While, *Nationstar* was the only case cited in the District Court's discussion of procedural unconscionability, the court made no attempt to distinguish it.  JA 148.  It was clear error for the District Court to then reach a conclusion directly contrary to that decision.  The Order was certainly not made "with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone*, 460 U.S. at 24; *see Nitro-Lift Techs, LLC v. Howard*, 133 S. Ct. 500, 501 (2012) (emphasizing that courts must "adhere to a correct interpretation of the [FAA] legislation," including the "Act's national policy favoring arbitration").

Applying the District Court's Order, it is difficult to imagine a scenario where arbitration would be upheld.  *See Concepcion*, 563 U.S. at 339 (arbitration agreements may not be invalidated by defenses only applicable to arbitration); *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 565 (N.D. Ohio 2004) ("If unequal bargaining positions alone were evidence of unconscionability, every single consumer mortgage

---

[4] This finding is another failed attempt to excuse Goodwin's failure to read the document.

loan transaction ever executed would be flawed. This proposition is simply untenable."); *New v. GameStop, Inc.*, 232 W.Va. 564, 578, 753 S.E.2d 62, 76 (2013) (finding "bald assertions" of unconscionability because the agreement was not negotiable and plaintiff had no meaningful alternatives "are simply not sufficient."). The absence of procedural unconscionability here is alone dispositive. The District Court's decision must be reversed.

## III. THE DISTRICT COURT ERRED IN FINDING THE ARBITRATION AGREEMENT TO BE SUBSTANTIVELY UNCONSCIONABLE.

This Court need not reach substantive unconscionability since *Nationstar* makes clear that procedural unconscionability does not exist under Goodwin's alleged facts. Even if this Court reaches the issue of substantive unconscionability, the District Court's holding that the terms of the Arbitration Agreement render it unenforceable is incorrect as a matter of law. None of the factors relied on by the District Court support a finding of substantive unconscionability, and even if they did, the proper result would have been to sever the unconscionable provision(s) so that the reminder of the Arbitration Agreement could be enforced as the parties intended.

### A. The bilateral fee-shifting provision does not render the Arbitration Agreement unconscionable.

Without citing any law, the District Court held that the bilateral fee-shifting provision, allowing the prevailing party to recover its costs and reasonable attorneys' fees, is substantively unconscionable because it "deters" consumers from bringing claims. JA 149-50. In so ruling, the District Court relied on nothing more than

14

Goodwin's bald statement that she would have to abandon her claim if the arbitrator found in BB&T's favor. JA 150. The District Court's conclusion ignores that unconscionability arises where a provision is "grossly imbalanced" or "one-sided" – neither of which exists where it applies equally to both parties.

While courts have been critical of <u>one-way</u> fee-shifting provisions (*i.e.* consumer pays costs and fees, regardless of who prevailed), courts have recognized that <u>bilateral</u> fee-shifting provisions (*i.e.* applies equally to both parties) are permissible. *Compare In re Checking Account Overdraft Litigation MDL No.2036*, 485 Fed. Appx. 403 (11th Cir. 2012) (finding unilateral, consumer always pays, fee shifting provision unconscionable) *with Baker v. Green Tree Servicing LLC*, No. 5:09-cv-00332, 2010 WL 1404088, *4 (S.D.W. Va. Mar. 31, 2010) ("Regardless of the substantive outcome, this provision is also not one-sided or unconscionable, as both parties could equally be subject to this fee-shifting provision."). In April, the West Virginia Supreme Court acknowledged this critical distinction in rejecting a claim of substantive unconscionability:

> Several state appellate courts have held that provisions shifting attorneys' fees are unconscionable in the arbitration context. These cases, however, all involved unilateral, rather than bilateral fee-shifting provisions. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024-25 (9th Cir. 2016) (collecting cases and recognizing "plaintiffs have not identified any case where a state appellate court held that a bilateral clause awarding attorneys' fees and costs to prevailing party was unconscionable, whether in an arbitration or nonarbitration context.").

*Employee Resources Group, LLC v. Harless*, No. 16-0493, 2017 WL 1371287, at *6 (W.Va.

Apr. 13, 2017) (finding a bilateral clause that allows the arbitrator to assess fees against either party "is not sufficient grounds to find the agreement unenforceable"). There is simply "nothing in West Virginia law that prohibits shifting attorneys' fees by contract or other agreement." *Baker*, 2010 WL 1404088, *14-15.

At the same time, J.A.M.S. rules, which govern arbitration under the Agreement, allow the parties to contract for "a different allocation of fees and expenses" and for the arbitrator to "allocate attorneys' fees and expenses if provided by the Parties' Agreement." JA 133 (Rule 24(g)), 136 (Rule 31). By implication, the District Court's conclusion undermines these rules and the arbitration process, which is contrary to the fundamental purpose of the FAA. *See Kindred Nursing Ctrs.*, 197 L. Ed. 2d at 812 (finding, a rule that even "covertly…fails to put arbitration agreements on an equal plan with other contracts" is preempted by the FAA); *Concepcion*, 563 U.S. at 344 ("parties may agree…to arbitrate according to specific rules").

It is equally true that speculative and conclusory statements concerning the potential costs of arbitration, like Goodwin makes here, are not sufficient to show substantive unconscionability. *See, e.g.*, *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (finding "the risk" that plaintiff "will be saddled with probative costs is too speculative to justify the invalidation of an arbitration agreement."); *Dytko*, 2014 WL 2440496, at *8 (finding "plaintiffs' speculation as to the costs of arbitration, without more, provides insufficient support for a finding of substantive unconscionability."); *Heller v. TriEnergy, Inc.,* No. 5:12–cv–45, 2012 WL 2740870, at

16

*13 (N.D.W. Va. July 9, 2012) (plaintiff "failed to provide any evidence that would lead this Court to find that the costs [from cost sharing provision] would impose upon him an unconscionably impermissible burden or deterrent."); *Employee Resources Group, LLC*, 2017 WL 1371287, at *6 (noting plaintiff's "potential costs and fees at this point are wholly speculative."); *Nationstar*, 237 W.Va. at 93, 785 S.E.2d at 643 (finding "[a]n unadorned averment, couched hypothetically, that they [plaintiffs] could not 'afford substantial arbitration costs' is not sufficient to meet their burden of demonstrating that such costs would be unreasonably burdensome.").

Nonetheless, as BB&T argued that this provision could be severed, BB&T is willing to agree not to enforce its right to collect fees and costs from Goodwin, if it prevails in arbitration, solely to avoid a continued dispute in this case.[5]  In sum, the bilateral fee-shifting provision is perfectly appropriate under the case law and J.A.M.S. rules and even assuming *arguendo* that this Court finds it unfair; the proper course is to sever the provision – which BB&T agrees it will not attempt to enforce – and refer the matter to arbitration.  *See* Argument, Part IV, *supra*.

---

[5] *See, e.g., Livingston v. Assocs. Fin. Inc.,* 339 F.3d 553, 557 (7th Cir. 2003) ("[T]he fact that [Defendants] agreed to pay all costs associated with arbitration forecloses the possibility that [Plaintiff] could endure any prohibitive costs in the arbitration process."); *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) ("Conseco's offer to pay the costs of arbitration and to hold the arbitration in the Larges' home state of Rhode Island mooted the issue of arbitration costs."); *Dobbins V. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999) (directing district court that if the arbitration fee is unreasonable, then the district court should accept defendant's offer to pay the arbitration fees).

**B.    The parties' agreement to narrow the limitations period is not substantively unconscionable.**

The District Court also cited the supposed lack of mutuality as grounds to invalidate the Arbitration Agreement, based in part, on the limitations period in the Agreement.  JA 148.  In particular, the District Court found that it "heavily favors BB&T's interest and position over that of the borrower" because "[w]hile borrowers are subject to a one year statute of limitations, BB&T may bring a collection action within three years."  *Id.*  This finding misstates the plain language of the Agreement, which provides a one year limitations period for *all parties*, with the narrow exception that BB&T has three years from default to collect on the debt.[6]  JA 49.  Further, the District Court erred in finding the provision substantively unconscionable, as it did nothing more than provide Goodwin the exact same statute of limitations period she was entitled for her claims at the time the Agreement was entered into.

All of Goodwin's claims arise under the WVCCPA.  JA 19-20, ¶ 17-25.  In 2009, when Goodwin entered the Contract, the statute of limitation for claims under the WVCCPA was one-year from the due date of the last scheduled payment under the agreement.[7]  W. Va. Code § 46A-5-101(a).  The Arbitration Agreement provides

---

[6] For example, BB&T would be bound by the same one-year limitations period for claims against the borrower for fraud, conversion, or unfair and deceptive practices, among others.

[7] The determination of whether a contract is unconscionable is to be made based upon facts and circumstances existing at the time of execution.  *See, e.g., Troy Min. Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 604, 346 S.E.2d 749, 754 (1986) ("The determination as to unconscionability, however, must be made as of the date of

that the one-year limitation period accrues at the same time as the underlying cause of action – here, one-year from the due date of the last scheduled payment.[8]  JA 49.

Thus, the Arbitration Agreement and the version of the WVCCPA in effect at the time the Contract was entered, both provide the same one-year limitations period for Goodwin's claims.  It was not until 2015, six years after the Contract was entered into, that the Legislature amended Section 46A-5-101(a) providing a four-year statute of limitations from the date of the violation (which, is *shorter* than the prior limitations period because of accrual).  Even if this provision shortened Goodwin's statute of limitations period to one-year (which, it did not); the Arbitration Agreement would not be substantively unconscionable.  *See Atl. Textiles v. Avondale Inc.*, 505 F.3d 274, 287 (4th Cir. 2007) (a one-year limitations period in an arbitration agreement is reasonable); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc) (enforcing one-year limitations provision in arbitration agreement).  There is no basis to find this provision was substantively unconscionable as of the date the Contract was entered, given that the West Virginia Legislature, at that time, believed that one-year was reasonable.

---

execution") (citation omitted); Restatement (Second) of Contracts § 208 (1979) ("If a contract or term thereof is unconscionable <u>at the time the contract is made</u> a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term.") (emphasis added).  The statute of limitation in effect at the time the Contract was entered – not the version of the statute amended six years later – is relevant in analyzing the limitations period under the Agreement.

[8] Under the WVCCPA, accrual begins at acceleration, pay-off, refinance, foreclosure, etc.  *Tribeca Lending Corp. v. McCormick*, 231 W.Va. 455, 745 S.E.2d 493 (2013).

It bears repeating that the Arbitration Agreement did <u>not</u> shorten the limitations period applicable to Goodwin's claims, but it significantly shortened BB&T's limitations period for default actions. Indeed, this period is <u>seven years less</u> than the ten-year limitations period for written contracts under W. Va. Code § 55-2-6. Lastly, while it is true that this provision would shorten the limitations period on a borrower's breach of contract claim to one-year, while allowing BB&T three years to institute a collection action, this fact does not render the Agreement substantively unconscionable because it is not grossly unfair. First, Goodwin has not asserted a breach of contract claim in this case, thus the limitations period applicable to that claim is irrelevant. Second, providing BB&T three years to bring a collection action benefits the borrower. This time allows the lender to consider alternatives to legal action to cure default, such as a repayment plan, loan modification, or short sale. If the one-year limitations period also applied to collection actions, BB&T would be forced to forego many of these loss mitigation alternatives that benefit the borrower. There is simply nothing grossly unfair or lop-sided about the limitations provision. Thus, the District Court's Order must be reversed.

## C. Preserving a lender's self-help remedies to assert its security interest is not substantively unconscionable.

In addition to the limitations period, the District Court found the Arbitration Agreement to be substantively unconscionable for lack of mutuality because it carves out from its scope certain self-help remedies with respect to BB&T's assertion of its

security interest.   JA 148-49.   This argument is frequently made, but has been

universally rejected by courts across the country:[9]

> Without question, agreements related to mortgage loans that involve a
> lender's right to protect its security interest may require the use of the
> court system to enforce that security interest…[Thus] the provision of
> an exception to arbitration for disputes rooted in the need to effect a
> foreclosure or to protect a security interest does not *ipso facto* create an
> overly one-sided contract that is unreasonable or unfair.

*Nationstar*, 237 W.Va. at 92, 785 S.E.2d at 642; *see Concepcion*, 563 U.S. at 341 (finding

"a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a

state-law holding that enforcement would be unconscionable, for this would enable

the court to effect what…the state legislature cannot.'") (quoting *Perry v. Thomas*, 482

U.S. 483, 493 (1987)).

   Again, the District Court cited *Nationstar v. West*, but ignored its findings.   In

*Nationstar*, the Court held that a carve-out for a lender's self-help remedies is not

___

[9] *See, e.g., State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W. Va. 341, 365-366 (W.
Va. 2013) (circuit court erred in finding arbitration agreement to be unconscionable,
finding "exclusions from arbitration reserved by [the lender] grants it the ability to
utilize the court system to protect its security interest in the [borrower's] home.  Other
courts addressing such clauses have found that they are *not unconscionable*") (emphasis
added); *Baker*, 2010 U.S. Dist. LEXIS 31738 at *14 (lender's self-help provision does
not render arbitration agreement unenforceable because "[t]he lender's ability to
foreclose or repossess a home when the buyer defaults is not a new or additional
remedy given to the lender by the contract.  Instead, it is a remedy independently
available to the lender by virtue of the law, and the contract does no more than
preserve that right and clarify the scope of the rest of the contract."); *Miller v. Equifirst
Corp.*, No. 2:00-0335, 2006 U.S. Dist. LEXIS 63816 *11 (S.D. W. Va. Sept. 5, 2006)
(upholding arbitration provision, finding "[t]he exception for proceedings related to
foreclosure is one that is not only common in arbitration agreements but quite
necessary in order to effectuate foreclosure and a retaking of the subject property by
lawful processes, where needed, without breach of the peace").

evidence of substantive unconscionability. *Id.* at 92, 785 S.E.2d at 642 (finding, "[t]he exception for proceedings related to foreclosure is one that is not only common in arbitration agreements but quite necessary in order to effectuate foreclosure and a retaking of the subject property by lawful processes, where needed, without breach of the peace.") (quoting *Miller v. Equifirst Corp.,* No. 2:00–0335, 2006 WL 2571634 (S.D.W. Va. Sept. 5, 2006)); *see also id.* at 93, 785 S.E.2d at 643 (quoting *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 872 (D. Or. 2002) ("These claims [asserting lender's security interest] are heavily regulated by statute…It does not strike this court as unreasonable, much less oppressive, to forego arbitration of such claims.)). This is consistent with law from the Supreme Court that "parties may agree to limit the issues subject to arbitration." *Concepcion*, 563 U.S. at 344.

While the District Court concluded that the "one-sidedness here extends further than that in *Nationstar*," it offered no discussion or explanation as to how or why the arbitration provision in this case was allegedly more one-sided. In comparing the two provisions, there is no indication the carve-outs here are any different than those upheld in *Nationstar*. Likewise, the District Court's reliance on *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E. 2d 854 (1998) is deeply flawed. Importantly, the District Court found that this case is "akin" to *Arnold* in its discussion of the carve-out provision for BB&T's self-help remedies. While the District Court acknowledged that *Arnold* was overruled, in part, by *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (W. Va. 2012), it misconstrued the scope of that ruling.

Specifically, *Dan Ryan Builders* overruled the court's holding in *Arnold* that a borrower's waiver of the right to access courts, while preserving the lender's right to the judicial forum, is unconscionable, finding the court's conclusion contrary to the FAA because it created a *per se* rule applicable only to arbitration agreements. *Dan Ryan Builders*, 230 W. Va. at 291, 737 S.E.2d 550. The West Virginia Supreme Court made clear that a carve-out provision for self-help remedies is not, in itself unconscionable; but instead, a lack of mutuality supports substantive unconscionability only where the "provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party." *Id.* at syl. pt. 10.

That lack of mutuality does not exist – as the same court later held in *Nationstar* – simply because the lender carved out certain self-help remedies that, like foreclosure, require judicial process to effectuate. Beyond the carve-out provision, unlike this case, *Arnold* concerned an elderly couple with limited education, who were solicited by a loan broker in their home. 204 W.Va. at 232, 236 n.7, 511 S.E.2d at 857, 861 n.7. The provision at issue in *Arnold* also waived the borrowers' right to consequential, punitive or other damages. *Id.* at 233, 511 S.E. 2d at 858. While these facts may support the unconscionability finding in *Arnold*, they do not exist in this case. Contrary to the District Court's conclusion, this case is akin to *Nationstar*, not *Arnold*. Accordingly, the Court erred in finding the Arbitration Agreement unconscionable for lack of mutuality.

**D. In finding the Arbitration Agreement to be substantively unconscionable, the District Court ignored clear precedent, disregarded the safeguards provided by the J.A.M.S. Rules, and wrongly adopted Goodwin's assumption that a competent and impartial arbitrator could not be selected.**

The final evidence the District Court relied on to support its substantive unconscionability finding is that the Arbitration Agreement requires the arbitrator to be "experienced in bank lending contracts." JA 150. Without discussion or support, the District Court speculated that this provision is grossly unfair because it "excludes attorneys with a background in consumer protection" from serving as an arbitrator. *Id.* Not only is this assumption false, but the District Court wrongly – and contrary to the FAA – prejudged the arbitration process itself. *See Kindred Nusring Ctrs. Ltd. P'ship v. Clark*, 197 L. Ed. 2d 806, 810, 137 S. Ct. 1421 (2017) (reversing decision of state supreme court that refused to enforce two arbitration agreements, finding a decision that "singles out arbitration agreements for disfavored treatment…violates the FAA").

A list of arbitrator candidates had yet to be proposed, much less an arbitrator appointed. Yet, the District Court found evidence of substantive unconscionability based upon the baseless presumption that the arbitrator may not be competent and/or that the arbitration process would be biased against Goodwin.[10] In doing so,

---

[10] It is difficult to construe the District Court's holding as anything other than a presumption of bias, in direct contravention of the FAA. *See Nitro-Lift Techs*, 133 S. Ct. at (reversing state court, finding its "decision disregards this Court's precedents on the FAA…which 'declare[s] a national policy favoring arbitration'") (quoting *Southland*

the District Court ignored the purpose the provision, ignored the purpose of the FAA, and ignored the clear case law. *See Concepcion*, 563 U.S. at 342 (a finding of unconscionability that, "[i]n practice…would have a disproportionate impact on arbitration agreements" is contrary to the FAA).

First, in seeking to have an arbitrator "experienced in bank lending contracts," the Agreement is simply expressing a desire that the arbitrator have some general knowledge of the subject matter. The Supreme Court has held that an arbitration provision may specify "that the decisionmaker be a specialist in the relevant field." *Concepcion*, 563 U.S. at 345. Nowhere does the arbitration provision state that it "excludes attorneys with a background in consumer protection." The District Court, simply adopting Goodwin's argument without analysis, made the unfounded assumption that the two are mutually exclusive, *i.e.,* an individual being experienced in "bank lending contracts" means that the individual is an "industry-tied arbitrator" that only represents lenders with no experience in consumer protection regulations.

To the contrary, banking laws often have consumer protection as one of their central purposes. Thus, an individual having experience in bank lending contracts should also have knowledge concerning the consumer protection law and regulations

---

*Corp. v. Keating*, 465 U.S. 1, 10 (1984)). While the District Court stated the provision does necessarily not mean that the arbitrator is likely to be biased, the District Court then found it was evidence of substantive unconscionability. Simply put, the selection of a competent and impartial arbitrator is obviously not evidence of substantive unconscionability. The only way the District Court could be finding evidence of substantive unconscionability is if there is some assumption being made about the arbitration process generally and some degree of bias on the part of the arbitrator.

governing those contracts. Similarly, an arbitrator with a background in filing consumer protection lawsuits would likely be experienced in the same contracts that they regularly contest. Again, however, the District Court's ruling cut off the process on the front end. It foreclosed the opportunity to obtain a competent and impartial arbitrator based upon the assumption that one could not be had. Under this analysis, there is no opportunity to seek an arbitrator with knowledge of the subject matter.

Along those same lines, the District Court ignored that the Arbitration Agreement requires J.A.M.S. to appoint the arbitrator. JA 49. Rules 7 and 15 of J.A.M.S. Comprehensive Arbitration Rules and Procedures ensure that a fair and impartial arbitrator is selected. JA 117, 122-24. Rule 15 requires J.A.M.S. to send the parties a list of at least five arbitrator candidates with a description of each arbitrator's background and experience and allows each party to strike two names from the list and then rank the remaining candidates. JA 122-24. The candidate with the highest composite ranking is selected. *Id.* J.A.M.S. also provides that a party may challenge an arbitrator for cause *at any time.* *Id.* There is absolutely zero indication these safeguards will not yield a fair and impartial arbitrator. Moreover, the FAA protects against arbitrator bias inasmuch as it provides courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(b).

Contrary to the District Court's ruling, courts, including the Supreme Court, have made very clear that parties cannot avoid arbitration based upon speculative

arguments that arbitrators will be incompetent or biased.  In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-31 (1991), the Supreme Court stated:

> Gilmer first speculates that arbitration panels will be biased. However, we decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators. In any event, we note that the NYSE arbitration rules, which are applicable to the dispute in this case, provide protections against biased panels . . .  The FAA also protects against bias, by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators.' There has been no showing in this case that those provisions are inadequate to guard against potential bias.

*Id.* at 30-31 (citation omitted); *see also Miller*, 2006 WL 2571634 *14 (S.D.W. Va. Sept. 5, 2006) (finding "speculative arguments . . . that the NAF [akin to FAA] is biased and its rules will not result in the appointment of an unbiased arbitrator represent little more than 'general antipathy to arbitration' which both the United States Supreme Court and the Fourth Circuit have rejected.") (citations omitted); *see also Dytko*, 2014 WL 2440496, at *7 ("[T]his Court finds that the AAA rules provide sufficient protections against the appointment of a biased arbitrator.").

The District Court, however, ignored this precedent and found substantive unconscionability based upon an assumption a competent and impartial arbitrator may not be selected.  This is the precise "general antipathy to arbitration" that the FAA sought to avoid, warranting reversal of the District Court's decision.  *See Nitro-Lift Techs*, 133 S. Ct. at 503 (courts "must abide by the FAA, which is 'the supreme Law of the Land' and by the opinions of this Court interpreting that law…Our cases

hold that the FAA forecloses precisely this type of 'judicial hostility towards arbitration'") (quoting U.S. Const., Art. IV, cl. 2; *Concepcion*, 563 U.S. at 342).

## IV.    EVEN ASSUMING, *ARGUENDO*, THAT A PROVISION OF THE ARBITRATION AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE, THE DISTRICT COURT ERRED IN REFUSING TO SEVER THAT PROVISION SO THAT ARBITRATION COULD BE COMPELLED.

The strong language of the FAA manifests a "liberal federal policy favoring arbitration agreements." *Moses H. Cone*, 460 U.S. at 24; *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 193 L. Ed. 365, 375 (2015) (reaffirming the obligation of all courts to give due regard to the federal policy favoring arbitration).  Because courts must rigorously enforce arbitration agreements, if the court finds that a provision of the arbitration agreement is unconscionable, then court "*must* then consider whether severance…rather than invalidation of the arbitration agreements, would be the appropriate remedy."  *Textiles v. Avondale Inc. (In re Cotton Yarn Antitrust Litig.)*, 505 F.3d 274, 292 (4th Cir. 2007) (emphasis added).  Severance – rather than invalidation – is appropriate as long as the arbitration provision "is capable of operating independently of the unconscionable [provision]." *Barras v. BB&T*, 685 F. 3d 1269, 1282-83 (11th Cir. 2012)[11].  Here, to the extent that the Court finds any provision unconscionable, severance is appropriate because this standard is clearly satisfied.

The Contract contains a severability provision.  JA 48.  Even assuming, *arguendo*, that one or more terms of the Arbitration Agreement are unconscionable, the

---

[11] In *Barras*, the 11th Circuit severed out a unilateral fee-shifting provision that required the consumer to pay for the lender's attorney's fees, even if she prevailed.  *Id*.

District Court failed to adequately consider and address severance, instead simply finding in a footnote that "the arbitration clause as a whole is so unconscionable that it cannot justly be enforced." JA 150, n.4. The proper result is not to deny arbitration, but to sever any unconscionable provision(s) and still compel arbitration. *See, e.g., In re Checking Account Overdraft Litigation MDL No.2036*, 485 Fed. Appx. at 403 (finding the unconscionable one-way fee shifting provision should have been severed and arbitration still compelled); *Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 549 (Ill. App. 2008) ("[W]here a portion of an arbitration clause is found to be unconscionable, Illinois's strong policy in favor of enforcing arbitration agreements is best served by severing the unconscionable provision and enforcing the remainder of the arbitration clause.").[12] None of the provisions challenged in this case are essential to the arbitration process; rather, it is clear that arbitration may proceed independently of them. This is especially true because there is a body of law (*i.e.* statutes, J.A.M.S. rules, and/or case law) governing fee-shifting, statutes of limitation, judicial foreclosure, and appointment of an arbitrator. Accordingly, consistent with the strong national policy favoring arbitration, the District Court should have severed any unconscionable terms and enforced the agreement to arbitrate.

---

[12] The bilateral fee-shifting provision is not substantively unconscionable. However, even assuming, *arguendo*, it was, there is no need to analyze whether to sever this provision given BB&T's agreement to waive its right to collect fees and costs should it prevail in the arbitration.

## V.    THE DISTRICT COURT ERRED IN NOT STRIKING CLASS ALLEGATIONS.

A byproduct of the District Court's refusal to enforce the parties' Arbitration Agreement is that the Court also refused to enforce the contracted-for class action waiver. JA 150; *see* JA 49 (containing class action waiver). The proper result is for this case to proceed in arbitration on an individual, rather than a class-wide, basis. *See, e.g., Zekri v. Macy's Retail Holdings, Inc.*, No. 1:10–CV–1740–MHS, 2010 WL 4660013, at *3 (N.D. Ga. Nov. 4, 2010) (striking the plaintiff's class allegations and ordering the parties to proceed to arbitration on an individual basis in accordance with their agreement). Even here, the District Court correctly held that the class action waiver does "not constitute [an] unconscionable term[]." *Id.*; *see also Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). Because the Arbitration Agreement should be enforced, Goodwin's putative class allegations must be stricken.

### CONCLUSION

The District Court erred in finding the Arbitration Agreement was procedurally and substantively unconscionable and refusing to enforce the same. This Court should reverse the District Court's decision and remand with instructions that BB&T's Motion to Compel Arbitration and to Strike be granted such that this case proceeds in arbitration on an individual basis.

Dated: June 5, 2017          **BRANCH BANKING & TRUST COMPANY**

By: ___/s/ John C. Lynch_____
                                    Of Counsel


John C. Lynch
Elizabeth S. Flowers
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: liz.flowers@troutmansanders.com

Jonathan L. Anderson
JACKSON KELLY, PLLC
1600 Laidley Tower
500 Lee Street, East
P. O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1288
Facsimile: (304) 340-1051
jlanderson@jacksonkelly.com

Christopher Kenneth Robertson
JACKSON KELLY, PLLC
P. O. Box 1068
Martinsburg, WV 25401
Telephone: (304) 260-4959
Facsimile: (304) 263-7110
crobertson@jacksonkelly.com

*Counsel for Branch Banking & Trust Company*

31

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**Effective 12/01/2016**

**No.** 17-1412    **Caption:** Latricia E. Goodwin v. Brank Banking & Trust Company

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]    this brief or other document contains _____8,560_____ [*state number of*] words

[ ]    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]    this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14-point Garamond _____ [*identify font size and type style*]; **or**

[ ]    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) John C. Lynch _____

Party Name Defendant Appellant _____

Dated: June 2, 2017 _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 5th day of June, 2017, I electronically filed the foregoing *Opening Brief of Appellant* with the Clerk of the Court of the U.S. Court of Appeals for the Fourth Circuit by using the Appellate CM/ECF system, which will cause a copy of the foregoing to be served on all counsel who have entered an appearance in this action.

 /s/ John C. Lynch 
John C. Lynch
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: john.lynch@troutmansanders.com

*Counsel for Branch Banking & Trust Company*